OPINION
TASHIMA, Circuit Judge:
James Russell Lambert appeals the district court’s denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the state trial court violated his due process rights by admitting into evidence an unreliable eyewitness identification. For the following reasons, we affirm the District Court’s denial of Lambert’s petition.
I. Factual and Procedural History
Because we write solely for the parties, we note only those facts relevant to our decision. On November 12, 1982, three black males entered the Coatesville Federal Savings and Loan Bank in Coatesville, Pennsylvania. One of the three pulled out a sawed-off, double-barrel shotgun and ordered the employees and customers in the bank to he down on the floor. The other two men then took $8,800 in cash from the tellers’ drawer, placed it in a bag, and all three fled the bank.
At a pre-trial hearing, Ann Smoker, a bank teller, testified that on the day of the robbery she was working at the first teller window, about five feet from the entrance door to the bank. Smoker testified that she heard someone yell, “Everybody hold it right there,” and that she looked up and saw a double-barreled, sawed-off shotgun about six inches away from her. The man holding the gun was about a foot away from Smoker, and Smoker looked at the man’s face for about five to ten seconds. The man then yelled, “Everybody get on the floor.” Smoker complied. Smoker testified that she did not see this man’s face again.
Wallace Strevell, the manager of the bank, also testified about the robbery at the pre-trial hearing. Strevell said that, at the time of the robbery, he was seated at his desk, located behind the teller counter. Strevell was on the telephone when he heard a commotion and looked up to see a young black man about 11 feet away, approaching him rapidly. Strevell testified that he looked directly at the man’s eyes for “maybe 15, 20 seconds.” Strevell also noticed another man at the front of the bank, with a shotgun in his hand. The man who was approaching Strevell took Strevell by the arm, directed him behind the teller counter and told him to he down. Strevell did not see the man again.
Three days after the robbery, on November 15, Smoker was shown a photo array that included a photo of Lambert. Smoker did not identify Lambert as the man who pointed the shotgun at her and instead identified another person. On that same day, officers presented Strevell with the same photo array. StreveU identified Lambert’s photo as the man who led him behind the teller’s counter. Lambert was arrested and charged with four counts related to the incident, including robbery and conspiracy.
On December 6,1983, the Court of Common Pleas for Chester County held a pre *382 trial hearing on Lambert’s motions to suppress in-court identification by Strevell and Smoker. Prior to the pre-trial hearing, Smoker was again shown a photo array that included Lambert’s photograph. Smoker did not identify his photograph. At the hearing, however, Smoker identified Lambert, who was sitting at counsel table, as the man that held the gun to her on the day of the robbery. Smoker explained that she was unable to pick Lambert out of the photo array because his eyes were closed in the photograph.
Smoker further testified that earlier that same day, she was seated outside the courtroom before the lunch break, when she saw Lambert come out of the courtroom, escorted by sheriffs deputies on either arm. Lambert was not in handcuffs or ankle shackles. Smoker testified that she said to the person sitting with her, “That’s the person that I remember,” and that at that moment, she felt the same way she felt on the day the robbery occurred: “My heart was beating fast.” Smoker explained that she knew the man exiting the courtroom was named Lambert because that was the name on the subpoena she had received. Smoker also learned on the day of the pre-trial hearing that Lambert was in court because Strevell had picked him out of a photo array. She also had seen Lambert’s photograph in the newspaper and knew that he had been arrested. She said, however, that she had identified Lambert in the courtroom based on seeing his face on the day of the robbery.
At the pre-trial hearing, Strevell also was asked if he could identify Lambert, who was sitting at counsel table, as the man who had approached him. Strevell said, “He certainly bears a very strong resemblance.... There is some doubt.” Strevell then said that another man sitting in the back of the courtroom bore “a strong resemblance, and it’s confusing in that he’s not seated at the defendant’s table.” Then, when asked again by the prosecution whether Lambert, seated at defense counsel’s table, was the man who took Strevell by the arm and led him behind the teller counter during the robbery, Strevell responded, “To the best of my knowledge it is. That was a year ago.... I have no doubt as to my identification in the photo lineup.”
Based on Strevell’s and Smoker’s testimony, as well as the testimony of officers, the state court concluded that the photo array and identification procedure were not suggestive and that an independent basis existed for identifying Lambert, based on the witnesses’ opportunity to observe Lambert during the robbery. The court denied Lambert’s motions to suppress his in-court identification.
At trial, Smoker identified Lambert as the man who had stood in front of her with a shotgun. Strevell likewise identified Lambert as the man who approached him, took him by the arm, and led him behind the teller counter. On December 9, 1983, the jury found Lambert guilty of robbery, recklessly endangering another person, and criminal conspiracy.
Lambert filed post-trial motions, asserting, among other claims, that the trial court erred in failing to grant Lambert’s motion to suppress the photo line-up and in-court identification. The trial court denied the motions. On September 17, 1984, the court sentenced Lambert to a term of imprisonment of 10 to 20 years for robbery and a consecutive term of imprisonment of 5 to 10 years for criminal conspiracy.
Lambert then petitioned for post conviction relief in the state courts, pursuant to the Pennsylvania Post Conviction Relief Act. The Pennsylvania Superior Court concluded that Smoker had a reliable independent basis for her in-court identification of Lambert and affirmed the order of the *383 Court of Common Pleas denying Lambert’s petition.
Lambert then filed his federal petition for writ of habeas corpus. The district court rejected Lambert’s claim of unreliable eyewitness identification and denied the petition. This timely appeal followed.
II. Analysis
Where, as here, the district court relies exclusively on the state court record and does not hold an evidentiary hearing, the scope of our review of the district court’s decision is plenary. Moore v. Morton, 255 F.3d 95, 103 (3d Cir.2001). Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), we may not grant a petition for writ of habeas corpus as to any claim that a state court has adjudicated on the merits unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d); Williams v. Price, 343 F.3d 223, 229 (3d Cir.2003) (citing Williams v. Taylor, 529 U.S. 362, 405-07, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
A. Unreliable Identification
An identification procedure that is unnecessarily suggestive and creates a substantial likelihood of irreparable misidentification violates due process. Manson v. Brathwaite, 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Unnecessary suggestiveness alone, however, does not require the exclusion of evidence. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). “A ‘suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability,’ for reliability is the ‘linchpin in determining the admissibility of identification testimony.’ ” Brathwaite, 432 U.S. at 106, 97 S.Ct. 2243.
As the Supreme Court explained in Biggers, in order to determine whether the identification was rehable even though the confrontation procedure was suggestive, a court must apply a totality of the circumstances analysis. Biggers, 409 U.S. at 199, 93 S.Ct. 375. The court considers factors that include: the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation. Id. at 199-200, 93 S.Ct. 375.
In Biggers, the Court enumerated and applied each of these factors, noting that the witness had ample opportunity to view the defendant, paid a high degree of attention, gave a detailed description of the defendant and was unequivocal in her identification. Id. at 200, 93 S.Ct. 375. The Court noted that several months had passed between the time of the crime and the identification, but reasoned that, weighing all the factors, there was no substantial likelihood of misidentification and that the evidence was properly allowed to go to the jury. Id. at 201, 93 S.Ct. 375.
Similarly, in Brathwaite, the Court enumerated and applied each of the Biggers factors to determine whether an identification from a single-photograph display was unreliable. Brathwaite, 432 U.S. at 114-16, 97 S.Ct. 2243. The Court noted that the witness looked directly at the defendant, who was in close proximity, paid a high degree of attention, gave a detailed and accurate description of the defendant within minutes of the transaction, and positively and unequivocally identified defendant’s photograph two days later. Id. at 114-15, 97 S.Ct. 2243. The Court conclud *384 ed that, given these factors, as well as the absence of any coercive pressure positively to identify the photograph, there was not a “very substantial likelihood of irreparable misidentification.” Id. at 116, 97 S.Ct. 2243.
We reached the opposite conclusion in a case on direct appeal, based on facts similar to the facts in this case, in United States v. Emanuele, 51 F.3d 1123 (3d Cir. 1995). In Emanuele, the witnesses were bank tellers who observed a robbery. Both were unable to identify the robber from a photo array. Id. at 1126. The two witnesses were subpoenaed by the government to testify, and, while sitting outside the courtroom, saw the defendant being led from the courtroom in manacles by the U.S. Marshals. The two witnesses spoke with one another, saying “it has to be him.” Id. We examined the totality of the circumstances, applied the Biggers factors and noted that the confrontation between the witnesses and the manacled defendant was impermissibly suggestive. Id. at 1128-30. We concluded that the witnesses’ failure to identify the defendant despite the opportunity to observe, coupled with the impermissibly suggestive “viewing of the defendant in conditions reeking of criminality, bolstered by the comments of another witness,” rendered the in-court identification unreliable. Id. at 1131.
Here, the state court applied only one of the Biggers factors, the opportunity to observe, in determining whether Smoker’s identification of Lambert was reliable. The state court did not consider either Smoker’s confrontation with Lambert outside the courtroom at the pre-trial hearing or Smoker’s failure to select Lambert’s photograph from the photo array. As in Emanuele, Smoker’s failure to identify, on two separate occasions, Lambert’s photograph, coupled with the somewhat suggestive confrontation with Lambert, who was flanked by U.S. Marshals outside the courtroom prior to the pretrial hearing, suggests that Smoker’s in-court identification may have been unreliable.
We are mindful, however, that this case is before us not on direct appeal, but rather, on appeal from the denial of a habeas petition filed pursuant to 28 U.S.C. § 2254. Applying the highly deferential standard of review established by AEDPA, we can reverse the district court’s denial of Lambert’s petition only if the state court opinion is contrary to, or an unreasonable application of, clearly established federal law of the Supreme Court. 28 U.S.C. § 2254(d); Price, 343 F.3d at 229 (citing Williams v. Taylor, 529 U.S. at 405-407, 120 S.Ct. 1495). Whether the state court opinion denying Lambert’s petition for post conviction relief meets that standard is a close question. It is also one that we need not reach, because we conclude that, even if the trial court erred in allowing Smoker’s in-court identification, the error was harmless.
B. Harmless Error
In order to grant habeas relief, not only must we find that a constitutional error occurred during trial, we must also find that the error was not harmless. Yohn v. Love, 76 F.3d 508, 522 (3d Cir.1996). We grant habeas relief only if the constitutional trial error “had substantial and injurious effect or influence in determining the jury’s verdict.” Hassine v. Zimmerman, 160 F.3d 941, 950 (3d Cir.1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).
Smoker’s identification was not the only identification evidence presented to the jury. Strevell, the bank manager, also provided an in-court identification, after having previously selected Lambert out of a photo array a few days after the robbery. Although there was some equivoca *385 tion by Strevell at the pre-trial hearing, his equivocation was minor and does not significantly diminish the import of Strevell’s selection of Lambert’s photograph, three days after the robbery, from a photo array. See Emanuele, 51 F.3d at 1131 (observing that witness’s slight qualification— not being “one hundred percent sure”— does not significantly diminish import of identification). Smoker’s testimony did not have quite the bolstering effect that Lambert argues it had, for there was little doubt or equivocation on Strevell’s part.
Further, we note that Smoker and Strevell provided conflicting accounts, a fact that weighs in favor of a finding of harmless error. While Smoker identified Lambert as the man who approached her with a shotgun in the front of the bank, Strevell identified Lambert as the man who walked up to his desk, led him behind the teller’s counter, and then stayed behind the counter during the course of the robbery. Strevell also testified that the man with the shotgun remained at the front of bank. Thus, although it appears that Smoker’s interaction was with one of the three robbers and Strevell’s interaction was with another of the three, both Smoker and Strevell identified the same man, Lambert, as the man they encountered. This inconsistency may have helped the defense, which could have argued to the jury that, because of this inconsistency, the jury should give little weight to the witnesses’ testimony and identification of Lambert.
In sum, we conclude that, even if admission of Smoker’s testimony was a constitutional trial error, the error was harmless because it did not have a substantial and injurious effect or influence on the jury’s verdict.
C. Motion for Expanded Certificate of Appealability
Lambert’s motion for a certificate of appealability (“COA”) was previously denied by a motions panel of the court, except as to Lambert’s due process claim. Lambert asks us to reconsider the prior denial and grant a COA to consider counsel’s ineffectiveness in failing adequately to cross-examine Strevell.
We must issue a COA if the petitioner has made “a substantial showing of the denial of a constitutional right.” Bronshtein v. Horn, 404 F.3d 700, 720 (3d Cir. 2005) (citing 28 U.S.C. § 2253(c)(2)). Lambert has not made any showing, substantial or otherwise, that his trial attorney’s failure to cross-examine Strevell about his equivocation in identifying Lambert at the pre-trial hearing fell below the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, Lambert’s trial counsel in fact did cross-examine Strevell, on re-cross, about his equivocation at the pre-trial hearing. Because Lambert has not made a substantial showing of a denial of his right to effective assistance of counsel, we deny Lambert’s request for a COA.
III. Conclusion
For the foregoing reasons, the September 22, 2003, order of the District Court is affirmed.